IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| ADDIE E. THWEATT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 3:21-cv-258 |
| | ) |
| PRINCE GEORGE COUNTY SCHOOL BOARD, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## COMPLAINT

Plaintiff, Addie E. Thweatt ("Plaintiff" or "Ms. Thweatt"), by counsel, hereby alleges the following causes of action:

## INTRODUCTION

1. Plaintiff brings causes of action under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, against Defendant, Prince George County School Board, arising from discrimination on the basis of race and retaliation for engaging in protected activity.

## PARTIES

2. Ms. Thweatt is African American and a citizen of the Commonwealth of Virginia, residing in Prince George County, Virginia.

3. Defendant, Prince George County School Board (individually, "PGCSB"), is the governing body of Prince George County Public Schools (collectively referred to as "PGCPS"), located in Prince George County, Virginia. On information and belief, PGCPS employs over 500 employees.

4. At all relevant times, Plaintiff was an employee of PGCPS as defined by 42 U.S.C. § 2000e(f).

5. At all relevant times, PGCPS was an employer of Plaintiff as defined by 42 U.S.C. § 2000e(b).

## JURISDICTION AND VENUE

6. On September 21, 2020, Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC").

7. On January 11, 2021, the EEOC issued a Notice of Right to Sue to Ms. Thweatt.

8. Ms. Thweatt received the Notice of Right to Sue on January 19, 2021.

9. Ms. Thweatt timely filed this action less than ninety (90) days after receipt of the Notice of Right to Sue.

10. This Court has subject matter jurisdiction pursuant to Title VII.

11. This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the causes of action arise under Title VII, a law of the United States.

12. Venue for this action lies properly in the United States District Court for the Eastern District of Virginia, Richmond Division, pursuant to 28 U.S.C. § 1391(b), as the events giving rise to Ms. Thweatt's claims occurred in Prince George County, Virginia, which is a territory included within those assigned to the Richmond Division of the Eastern District of Virginia.

## FACTUAL BACKGROUND

13. PGCPS employed Ms. Thweatt as a school bus driver from January 1978 until May 2020.

14. At all relevant times stated herein, Ms. Thweatt satisfactorily performed her job duties and met the legitimate business expectations of PGCPS.

15. Prior to May 2018, Ms. Thweatt had no disciplinary reports or negative performance evaluations in her preceding forty years of service for PGCPS as a school bus driver.

16. On May 10, 2018, Ronald Rhodes, then-acting Director of Operations for PGCPS and Caucasian, specifically directed Alvin Jones, the Resource Officer for PGCPS and African American, to file a criminal charge of disorderly conduct against Ms. Thweatt arising from a confrontation with a student.

17. On July 17, 2018, the Juvenile and Domestic Relations Court found Ms. Thweatt not guilty.

18. When Ms. Thweatt returned to work the next school year (September 2018 to June 2019), PGCPS assigned Ms. Thweatt to a different bus route, Route 23, that was commonly known as a problem route due to the above-average number of disturbances and/or fights on the bus caused by disruptive students.

19. Bob White, a Caucasian school bus driver, previously drove Route 23, and received assistance by an African-American bus aide.

20. However, when PGCPS assigned Route 23 to Ms. Thweatt in September 2018, it reassigned the aide to another route, leaving Ms. Thweatt with no bus aide.

21. On October 1, 2019, PGCPS hired Dustin Nase ("Mr. Nase"), Caucasian, as Director of Transportation.

22. Mr. Nase was the brother-in-law of Chris Johnson, a member of the PGCSB and Caucasian, and the son of Pam Wiggins, a long-time PGCPS school bus driver and Caucasian.

23. Mr. Nase had no prior pupil transportation experience and had never before worked in any capacity for PGCPS. Mr. Nase's prior employment background was in refuse disposal.

24. In October 2019, Mr. Nase began to micromanage Ms. Thweatt's performance without reason or cause, despite Mr. Nase's complete lack of experience in pupil transportation and Ms. Thweatt's over forty years of experience. Mr. Nase began to fabricate alleged disciplinary issues based upon unfounded and/or outright false accusations.

25. On October 16, 2019, Ms. Thweatt wrote a disciplinary referral for a student on her school bus for repeatedly violating the school ear bud policy despite numerous attempts to remind the student of the policy. PGCPS permits students to wear one ear bud while on school property. The subject student was wearing two ear buds.

26. Thereafter, Mr. Nase issued to Ms. Thweatt a "Letter of Counseling," dated October 16, 2019. In his meeting with Ms. Thweatt, Mr. Nase explained to Ms. Thweatt that (1) she was correct in issuing the disciplinary referral to the student, (2) the Letter of Counseling was only a formality to show to the complaining parent of the student that the school had considered the matter, and (3) the Letter of Counseling would not be placed in her personnel file.

27. Despite his verbal assurances, Mr. Nase nevertheless placed the Letter of Counseling in Ms. Thweatt's personnel file without informing Ms. Thweatt.

28. On November 7, 2019, Mr. Nase issued a "coaching/training" reprimand to Ms. Thweatt for making minor contact with the mirror of an adjacent school bus while Ms. Thweatt was reversing her school bus. There was no damage to the other school bus.

29. Mr. Nase and/or PGCPS disciplined other similarly situated non-African American school bus drivers differently for conduct that was similar to the bus incident for which PGCPS reprimanded Ms. Thweatt, including, but not limited to:

    a. In the Fall of 2019, Ashley Rhodes, a Caucasian school bus driver hit a special needs child with her school bus. Upon information and belief, PGCPS did not

reprimand Ms. Rhodes for this conduct in the same manner that it reprimanded Ms. Thweatt. Upon information and belief, Ms. Rhodes still maintains employment with PGCPS.

    b.    In the Fall of 2019, Tori Matterson, a Caucasian school bus driver, scraped an adjacent school bus. Upon information and belief, PGCPS did not reprimand Ms. Matterson for this conduct in the same manner that it reprimanded Ms. Thweatt. Upon information and belief, Ms. Matterson still maintains employment with PGCPS.

    c.    In the Fall of 2019, Traci Grubbs, a Caucasian school bus driver, ran her school bus into a ditch. Upon information and belief, PGCPS did not reprimand Ms. Grubbs for this conduct in the same manner that it reprimanded Ms. Thweatt. Upon information and belief, Ms. Grubbs still maintains employment with PGCPS.

30.    In mid-December 2019, Mr. Nase held a holiday party for the Transportation Department of PGCPS. The party was held on school property from 10:30 a.m. to 1 p.m. The party was optional, and attendance was not required.

31.    Ms. Thweatt did not attend the holiday party as PGCPS had assigned her to the Rowanty shuttle run from 11 a.m. to 1 p.m. However, Mr. Nase falsely claimed that Ms. Thweatt was attending a breakfast at a local Golden Corral that same day for PGCPS transportation department employees. Ms. Thweatt was not at the Golden Corral breakfast. Mostly African-American bus drivers attended the breakfast at the local Golden Corral, while mostly Caucasian bus drivers attended Mr. Nase's holiday party.

32.    Mr. Nase distributed PGCPS Transportation Department jackets to all transportation employees present at the holiday party. Ms. Thweatt and other African-American bus drivers who did not attend Mr. Nase's holiday party were not offered a jacket.

33. Sometime after the holiday party, Mr. Nase boarded Ms. Thweatt's bus. Ms. Thweatt asked Mr. Nase about the jacket to which Mr. Nase replied, "You're going to have to do more talking to get a jacket," or words to that effect.

34. On or about January 10, 2020, Ms. Rhodes allegedly advised Mr. Nase that Ms. Thweatt spoke "negatively" about Mr. Nase.

35. Thereafter, Mr. Nase reviewed a school bus video in which Ms. Thweatt stated, "He [Mr. Nase] can keep his jacket," or words to that effect. Mr. Nase was not present at the time Ms. Thweatt made the comment to two or three other school bus drivers.

36. On January 21, 2020, Ms. Thweatt was unexpectedly called into a meeting between Dr. Lisa Pennycuff, PGCPS Superintendent and Caucasian, and Laura Estes, the PGCPS Director of Human Resources and Caucasian. In the meeting, Dr. Pennycuff accused Ms. Thweatt of attending the Golden Corral breakfast and thereby "boycotting" Mr. Nase's non-mandatory holiday party and speaking "negatively" about Mr. Nase. Ms. Thweatt explained that she did not attend either one of the non-mandatory holiday events because she was executing a shuttle run from 11 a.m. to 1 p.m., the same hours during which the holiday party was held. Ms. Thweatt further explained that the discussion regarding Mr. Nase was between herself and two or three other school bus drivers concerning unfair racial profiling and/or targeting of her by Mr. Nase and other administrators.

37. In response to the January 21, 2020 meeting, Ms. Estes issued Ms. Thweatt a Letter of Reprimand on January 22, 2020. The Letter of Reprimand was chiefly based on the allegation that Ms. Thweatt had spoken negatively about Mr. Nase. In addition, the Letter of Reprimand noted the prior innocuous incidents set forth above, incredibly describing those incidents as "a

cumulative, pervasive, and chronic pattern of unacceptable work performance as a PGCPS bus driver."

38. On February 3, 2020, Ms. Thweatt filed a Report of Harassment and Discrimination based upon the persistent and unreasonable actions taken by PGCPS and Mr. Nase in particular.

39. By letter dated February 17, 2020, William Barnes, Assistant Superintendent of PGCPS and Caucasian, stated, in part, "the investigation did not rise to the level of harassment or discrimination to support the complainant's allegations," without providing any substantive reasoning or justification. On information and belief, the same office previously sent the same form letter to other African-American employees regarding the same or similar complaints.

40. On February 19, 2020, Ms. Thweatt, by counsel, submitted a Freedom of Information Act (FOIA) request to PGCPS. The FOIA request sought the following items: (1) Job description of Director of Operations for Prince George County Public Schools for the time period of January 1, 2018, to the present; (2) Job description of Director of Transportation for the Prince George County Public Schools for the time period of January 1, 2018 to present; (3) Any and all emails containing/involving the words boycott, holiday party, Christmas party, venting party, team building, jacket(s), Mr. Nase's party and/or his Christmas party for the time period of October 1, 2019 to the present; (4) Any and all emails containing the names Lillie Cook, Canytha Martin, Addie Thweatt, Clearance Thweatt and/or Wayne Moore for the time period of October 1, 2019 to present.

41. On March 5, 2020, PGCPS responded to Ms. Thweatt's FOIA request by stating that if Ms. Thweatt wanted personnel materials concerning the aforementioned items, she would need to pay PGCPS $99,022.00. Ms. Thweatt declined the invitation to pay the incomprehensible sum to PGCPS.

42. Undeterred by Ms. Thweatt's Report of Harassment and FOIA request, PGCPS continued in its illegal discriminatory efforts against Ms. Thweatt.

43. By a Coaching Form dated February 24, 2020, Mr. Nase's Department of Transportation claimed Ms. Thweatt should have written a disciplinary referral for both a male and female student engaging in the same or similar conduct instead of just the male student. However, Ms. Thweatt observed the conduct from her driver's rear-view mirror and could not see the female student engaging in similar conduct with the male student.

44. Between February and March 2020, following numerous requests for assistance to handle Route 23, Mr. Nase refused to provide Ms. Thweatt with road-side assistance or an aide, which PGCPS provided to other Caucasian school bus drivers such as Mr. White, Ida Butler, and Ms. Matterson.

45. In fact, one day Ms. Thweatt was on leave, Mr. White handled her route, experienced the same or similar issues as Ms. Thweatt, requested assistance, and immediately received assistance from Mr. Nase and Wayne Moore, a Caucasian transportation department employee.

46. On or about April 2, 2020, Mr. Nase issued his first performance evaluation of Ms. Thweatt since assuming the role of Director of Transportation. Unlike Ms. Thweatt's positive performance evaluations over the past four decades, Mr. Nase's performance evaluation was the most negative that Ms. Thweatt had received in her over forty years of service with PGCPS. Mr. Nase gave Ms. Thweatt an overall "Unsatisfactory" rating, including one "Good" rating for "Availability," despite perfect attendance and willingness to work overtime; three "Improvement Needed" ratings; and seven "Unsatisfactory" ratings. The chief complaint raised in the performance evaluation was that Ms. Thweatt required too much assistance "to get her bus under

control" and for "calling in" for assistance. Mr. Nase concluded the performance evaluation by stating that Ms. Thweatt may not be recommended for renewal of her contract.

47. On or about April 17, 2020, after Mr. Nase issued his performance evaluation of Thweatt stating that Ms. Thweatt's contract may not be renewed for the 2020-2021 school year, Dr. Pennycuff informed Ms. Thweatt by letter that she would be recommending to the Board that Ms. Thweatt's contract not be renewed. At that time, Ms. Thweatt had served as a PGCPS bus driver for over 40 years.

48. After realizing that she had not been placed on the new school employee-roster for school year 2020-2021, Ms. Thweatt contacted Mr. Johnson on or about May 21, 2020, to inquire about her employment status. Mr. Johnson informed Ms. Thweatt that she should contact the PGCPS Human Resources Department. When Ms. Thweatt contacted the PGCPS Human Resources Department, she received oral notice by a human resources assistant named "Cindy" that her employment contract would not be renewed.

49. On or about May 28, 2020, after receiving oral notice from the PGCPS Human Resources Department that her contract would not be renewed, Ms. Thweatt tendered her forced Letter of Resignation by hand to PGCPS Human Resources, effective June 12, 2020.

## STATEMENT OF CLAIMS

### COUNT I:
### DISCRIMINATION ON THE BASIS OF RACE
### IN VIOLATION OF TITLE VII (42 U.S.C. § 2000e-2(a)(1))

50. Plaintiff incorporates by reference and realleges each allegation set forth above.

51. Plaintiff is African American and a member of a protected class.

52. At all relevant times, Plaintiff was satisfactorily performing her job duties and otherwise meeting her employer's legitimate expectations.

53. PGCPS, and Mr. Nase in particular, discriminated against Plaintiff because of her race by treating Plaintiff differently than similarly situated Caucasian bus drivers.

54. Beginning in October 2019, Mr. Nase micromanaged Ms. Thweatt's performance and fabricated alleged disciplinary issues based upon unfounded and/or outright false accusations.

55. On or about October 16, 2019, Mr. Nase wrongfully issued to Ms. Thweatt a "Letter of Counseling" for Ms. Thweatt's issuance of a disciplinary referral to a student for violating the ear-bud policy of PGCPS, despite admitting that Ms. Thweatt was correct in issuing the disciplinary referral.

56. On November 7, 2019, Mr. Nase wrongfully reprimanded Ms. Thweatt for making minor contact with the mirror of an adjacent school bus while Ms. Thweatt was reversing her school bus.

57. On January 21, 2020, PGCPS, by and through Dr. Pennycuff and Ms. Estes, wrongfully accused Ms. Thweatt of boycotting Mr. Nase's non-mandatory holiday party despite Ms. Thweatt executing a shuttle run during the same hours of the holiday party.

58. On January 22, 2020, PGCPS, by and through Ms. Estes, wrongfully issued Ms. Thweatt a Letter of Reprimand for allegedly speaking negatively about Mr. Nase, when Ms. Thweatt merely stated, "He [Mr. Nase] can keep his jacket," or words to that effect, while complaining about the unfair profiling and/or targeting of her by Mr. Nase and other administrators which is the very subject of this complaint.

59. On or about February 24, 2020, Mr. Nase wrongfully issued a coaching letter to Ms. Thweatt for "choosing" to reprimand a male student instead of a female student, for engaging in the same or similar conduct, although Ms. Thweatt did not and could not see the female student engaging in the conduct.

60. PGCPS, and Mr. Nase in particular, disciplined other similarly situated Caucasian school bus drivers differently, or not at all, for conduct that was similar to, or more egregious than, the conduct for which PGCPS reprimanded Ms. Thweatt.

61. Despite numerous requests for assistance to handle Route 23—a bus route commonly known as a problem route due to the above-average number of disturbances and/or fights on the bus caused by disruptive students—since September 2018, PGCPS, and Mr. Nase in particular, refused to provide Ms. Thweatt with road-side assistance or an aide.

62. PGCPS provided greater and more accessible road-side assistance and/or an aide to other similarly situated Caucasian school bus drivers such as Mr. White, Ms. Butler, and Ms. Matterson.

63. Meanwhile, Mr. Nase wrongfully criticized Ms. Thweatt in her performance evaluation in April 2020 for requesting too much assistance "to get her bus under control" and for "calling in" for assistance, and Mr. Nase used this criticism as a basis for not recommending for renewal of Ms. Thweatt's contract.

64. Due to the actions of PGCPS, Plaintiff suffered lost wages and benefits, emotional distress, anxiety, stress, embarrassment, humiliation, pain, suffering, damage to her reputation, and loss of enjoyment of life.

## COUNT II:
## RETALIATION IN VIOLATION OF TITLE VII (42 U.S.C. § 2000e-3(a))

65. Plaintiff incorporates by reference and realleges each allegation set forth above.

66. On February 3, 2020, Ms. Thweatt engaged in protected activity by filing a Report of Harassment and Discrimination, detailing several instances of disparate treatment.

67. PGCPS proceeded to engage in retaliatory conduct over the next few months.

68. On February 24, 2020, PGCPS contrived yet another unfounded and false performance issue through a Coaching Form based upon Ms. Thweatt issuing a disciplinary referral for only one student instead of two.

69. No PGCPS school bus driver except Ms. Thweatt has been disciplined for failure to issue a referral for two students instead of just one, when the school bus driver could not and did not see both students engaging in prohibited conduct.

70. Between February and March 2020, following numerous requests for assistance to handle Route 23, Mr. Nase refused to provide Ms. Thweatt with road-side assistance or an aide.

71. In April 2020, Mr. Nase issued a negative performance evaluation of Ms. Thweatt, repeatedly claiming Ms. Thweatt required too much assistance "to get her bus under control" and for "calling in" for assistance despite providing an aide to the prior Caucasian bus driver for Route 23 and providing greater and more accessible road-side assistance to other similarly situated Caucasian school bus drivers such as Mr. White, Ms. Butler, and Ms. Matterson.

72. On or about April 17, 2020, Dr. Pennycuff informed Ms. Thweatt by letter that she would be recommending to the Board that Ms. Thweatt's contract not be renewed. At that time, Ms. Thweatt had served as a PGCPS bus driver for over forty years.

73. On or about May 21, 2020, Plaintiff learned PGCPS would not renew her employment contract.

74. On or about May 28, 2020, after receiving oral notice from the PGCPS Human Resources Department that her contract would not be renewed, Ms. Thweatt tendered to PGCPS her forced Letter of Resignation, effective June 12, 2020.

75. PGCPS took adverse employment action against Ms. Thweatt by not renewing her employment contract in May 2020.

76. Due to the actions of PGCPS, Plaintiff suffered lost wages and benefits, emotional distress, anxiety, stress, embarrassment, humiliation, pain, suffering, damage to her reputation, and loss of enjoyment of life.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court:

A. Enter judgment in her favor against Defendant, Price George County School Board;

B. Declare the acts and practices complained of herein are in violation of Plaintiff's rights as secured by Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*;

C. Enjoin Defendant from engaging in such unlawful employment practices under Title VII;

D. Order such affirmative action as may be appropriate, including, but not limited to, hiring Plaintiff to a comparable position at PGCPS or to her former position or, in the alternative, award Plaintiff front pay;

E. Award all back pay and benefits, including salary increases, bonuses, vacation pay, and other benefits, with interest on the same running from June 12, 2020 to the date a final judgment is entered for her;

F. Award compensatory damages, including, but not limited to, emotional and mental distress, anxiety, stress, embarrassment, humiliation, pain, suffering, damage to her reputation, and loss of enjoyment of life;

G. Award reasonable attorneys' fees and costs;

H. Award a separate amount to offset the adverse tax effects of any lump sum payments of damages awarded herein;

I. Award pre- and post-judgment interest on any monetary award; and

J. Award all other such equitable relief as may be appropriate to effectuate the purposes of Title VII, including leave to amend the facts, add parties and claims, and amend damages sought as further evidence is obtained through discovery in this matter.

**PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE.**

        Respectfully submitted,

        **ADDIE THWEATT**
        *Plaintiff*

By:           /s/_____
        James B. Thorsen
        VSB No. 18113
        Jesse A. Roche
        VSB No. 82579
        Judson R. Peverall
        VSB No. 94086
        Attorneys for Addie Thweatt
        THORSENALLEN LLP
        5413 Patterson Avenue, Suite 201
        P. O. Box 17094
        Richmond, Virginia 23226
        Telephone: (804) 447-7234
        Facsimile: (804) 447-7813
        jthorsen@thorsenallen.com
        jroche@thorsenallen.com
        jpeverall@thorsenallen.com