IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

ADDIE E. THWEATT, )
)
        Plaintiff, )
)
v. ) Civil Action No. 3:21cv258–HEH
)
PRINCE GEORGE COUNTY )
SCHOOL BOARD, )
)
        Defendant. )

## MEMORANDUM OPINION
### (Granting Partial Motion to Dismiss and Granting Leave to Amend)

This matter is before the Court on Prince George County School Board's ("Defendant" or "School Board") Partial Motion to Dismiss for Failure to State a Claim ("Motion") filed on May 20, 2021. (ECF No. 4.) On April 16, 2021, Addie E. Thweatt ("Plaintiff" or "Thweatt") filed a Complaint alleging that Defendant violated Title VII of the Civil Rights Act of 1964. (Compl. at ¶ 1, ECF No. 1.) Defendant challenges the sufficiency of Count I in which Plaintiff claims that Defendant discriminated against her because of her race in violation of 42 U.S.C. § 2000e–2(a)(1).[1] The parties have submitted memoranda in support of their respective positions. On August 13, 2021, the Court heard oral argument on the issues, and the Motion is now ripe for review. For the reasons stated herein, the Motion will be granted and Count I of the Complaint will be

---

[1] Count II of the Complaint alleges that Defendant unlawfully retaliated against Plaintiff for engaging in a protected activity in violation of 42 U.S.C. § 2000e–3(a). (Compl. at ¶1.) Defendant does not challenge the sufficiency of that claim.

dismissed without prejudice. The Court, however, will grant Plaintiff leave to file an amended complaint.

## I. BACKGROUND

As required by Federal Rule of Civil Procedure 12(b)(6), in reviewing a motion to dismiss for failure to state a claim, the Court must "accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff." *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016). Viewed in this light, the relevant facts are as follows.[2]

Thweatt is an African-American female. (Compl. at ¶ 2.) She worked for Prince George County Public Schools ("PGCPS"), of which Defendant is the governing body, from January 1978 until May 2020. (*Id.* at ¶ 13.) During that time, she satisfactorily conducted her responsibilities as a bus driver and never received a disciplinary report or negative performance evaluation until May 2018. (*Id.* at ¶¶ 14–15.)

In the fall of 2018, PGCPS reassigned Thweatt to Route 23, a known "problem route" because of the number of disruptive student passengers. (*Id.* at ¶ 18.)

On October 1, 2019, PGCPS hired a new white supervisor of their bus drivers, Dustin Nase. (*Id.* at ¶ 21.) Thweatt received myriad reprimands from Nase and his superiors after he joined PGCPS. On October 16, 2019, Nase filed a "Letter of

---

[2] Defendant argues that facts detailed in the complaint occurring before November 26, 2019 are time barred because they fall outside the 300-day period allowed under Title VII. (Def.'s Mem. Supp. at 4, n. 2, ECF No. 5.) While allegations outside the 300-day period may not support a standalone charge of discrimination, they may "constitute relevant background evidence for valid claims." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996). Here, plaintiff only uses, and the Court only accepts, allegations within the barred period as background evidence.

2

Counseling" against Thweatt for inappropriately disciplining a student. (*Id.* at ¶¶ 25–26.) On November 7, 2019, Nase wrote a "coaching/training" letter that reprimanded Thweatt for clipping the mirror of an adjacent school bus. (*Id.* at ¶ 28.) Nase did not issue similar reprimands to other white bus drivers for similar actions.[3] (*Id.* at ¶ 29.) On January 22, 2020, Laura Estes, the PGCPS Director of Human Resources, wrote a "Letter of Reprimand" admonishing Thweatt for speaking negatively about Nase in front of other drivers and describing her prior work performance as "unacceptable." (*Id.* at ¶ 37.) Nase issued another coaching letter on February 24, 2020 which criticized Thweatt for disciplining a male student for conduct while not disciplining a female student for the same conduct. (*Id.* at ¶ 43.)

Beyond the disciplinary letters, on multiple occasions in February and March 2020, Thweatt requested roadside assistance, along with a bus aide to help her with disruptive students on Route 23, but Nase refused both requests. (*Id.* at ¶ 44.) PGCPS provided roadside assistance to other white bus drivers including Bob White, Ida Butler, and Tori Matterson. (*Id.* at ¶¶ 19, 44.) One day when White filled in for Thweatt on Route 23, White requested roadside assistance from Nase and received it. (*Id.* at ¶ 45.)

Nase issued Thweatt's first performance evaluation under his supervision on April 2, 2020. (*Id.* at ¶ 46.) In contrast to Thweatt's evaluations over her previous four decades of employment, she received an overall "Unsatisfactory" rating. (*Id.*) "The chief

---

[3] Thweatt details three incidents involving white bus drivers in the fall of 2019. Ashley Rhodes hit a child with her school bus and PGCPS did not reprimand her in the same way or terminate her. (*Id.* at ¶ 29.) Tori Matterson scraped another school bus, was not reprimanded in the same way, and kept her job. (*Id.*) Lastly, Traci Grubbs drove her bus into a ditch, was not reprimanded the same way as Thweatt, and is still employed with PGCPS. (*Id.*)

complaint raised in the performance evaluation was that Thweatt required too much assistance 'to get her bus under control'" and called in for assistance too often. (*Id.*) The evaluation concluded that the School Board should not renew Thweatt's contract. (*Id.*)

On April 17, 2020, Lisa Pennycuff, Superintendent of PGCPS, also said she would recommend that the School Board not renew Thweatt's contract. (*Id.* at ¶ 47.) Later, Thweatt did not see her name placed on the employee roster for the upcoming school year. (*Id.* at ¶ 48.) Thweatt phoned PGCPS's Human Resources Department and was told by an assistant that her employment contract would not be renewed. (*Id.*) On May 28, 2020, Thweatt filed a Letter of Resignation with PGCPS which was effective on June 12, 2020. (*Id.* at ¶ 49.)

## II. STANDARD OF REVIEW

A Rule 12(b)(6) motion "does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." *Tobey v. Jones*, 706 F.3d 379, 387 (4th Cir. 2013) (quoting *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)). "A complaint need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Ray v. Roane*, 948 F.3d 222, 226 (4th Cir. 2020) (alteration in original) (quoting *Tobey*, 706 F.3d at 387). However, a "complaint must provide 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Turner v. Thomas*, 930 F.3d 640, 644 (4th Cir. 2019) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Allegations have facial plausibility 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Tobey*, 706 F.3d at 386 (quoting

4

*Iqbal*, 556 U.S. at 679). A court, however, "need not accept legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments." *Turner*, 930 F.3d at 644 (quoting *Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012)). In considering such a motion, a plaintiff's well-pleaded allegations are taken as true, and the complaint is viewed in the light most favorable to the plaintiff. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009). Legal conclusions enjoy no such deference. *Iqbal*, 556 U.S. at 678.

### III. ANALYSIS

In Count I of the Complaint, Plaintiff alleges that Defendant discriminated against her on the basis of race. (Compl. at 9.) Title VII makes it unlawful for an employer "to discharge . . . or otherwise discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race . . . ." 42 U.S.C. § 2000e-2(a)(1). A plaintiff may establish liability under this statute via two methods. First, the plaintiff can present direct evidence that "[her] race was a motivating factor in the employer's adverse employment action." *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 213 (4th Cir. 2007); *see Swaso v. Onslow Cty. Bd. of Educ.*, 698 F. App'x 745, 747 (4th Cir. 2017) (applying same test at the motion to dismiss stage). Second, the plaintiff can rely on the framework created in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Holland*, 487 F.3d at 214. The Complaint in this case relies on *McDonnell Douglas*.

Under *McDonnell Douglas*, the plaintiff may demonstrate a prima facie case for discrimination by showing that: "(1) she is a member of a protected class; (2) she

5

'suffered an adverse employment action'; (3) her job performance was satisfactory; and (4) the adverse employment action occurred 'under circumstances giving rise to an inference of unlawful discrimination.'" *Swaso*, 698 F. App'x at 747 (quoting *Adams v. Tr. of Univ. of N.C.-Wilmington*, 640 F.3d 550, 558 (4th Cir. 2011)). At the motion to dismiss stage, a plaintiff need not prove a prima facie case but instead must allege evidence sufficient to show "a short and plain statement of the claim" based on these four elements. *McCleary-Evans v. Maryland Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015) (quoting *Twombly*, 550 U.S. at 555).

Defendant does not dispute that Plaintiff alleges that she is a member of a protected class and her job performance was satisfactory. Rather, Defendant argues that the second and fourth elements are not sufficiently detailed in the Complaint. (Def.'s Mem. Supp. at 8–9.) While the Court finds that Plaintiff properly alleges the second element, the Court agrees with Defendant that Plaintiff has not adequately pled the fourth element.

"An adverse employment action is a discriminatory act that adversely affect[s] the terms, conditions, or benefits of the plaintiff's employment." *Swaso*, 698 F. App'x at 748 (quoting *Holland*, 487 F.3d at 219). While it need not rise to the level of an ultimate employment decision like termination, an adverse employment action must involve "some direct or indirect impact on an individual's employment as opposed to harms immaterially related to it." *Id.* (quoting *Adams v. Anne Arundel Cty. Pub. Schs.*, 789 F.3d 422, 431 (4th Cir. 2015)). Put another way, an adverse employment action requires "a

6

significant change in employment status." *Id.* (quoting *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 337 (4th Cir. 2011)).

In this case, the letters and reprimands issued against Thweatt do not rise to the level of adverse employment actions.[4] None of the letters overtly affect any term or condition of Plaintiff's employment. *See Stoyanov v. Mabus*, 126 F. Supp. 3d. (D. Md. 2015) (holding that a letter of reprimand by itself was not an adverse employment action). For similar reasons, Nase's refusal to give Thweatt roadside assistance on her bus route was not an adverse employment action. The lack of assistance did not demote the Plaintiff, decrease her salary, or cause other significant changes to her employment status. *Holland*, 487 F.3d at 219; *see Prince-Garrison v. Maryland Dep't of Health & Mental Hygiene*, 317 F. App'x 351, 353 (4th Cir. 2009) (holding that not providing an employee with certain resources was not an adverse action).

Thweatt's poor performance evaluation, however, does constitute an adverse employment action. A performance evaluation may be an adverse employment action "only where the employer subsequently uses the evaluation as a basis to detrimentally alter the terms or conditions of the recipient's employment." *James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 377 (4th Cir. 2004). Lesser consequences, such as a mere "loss of prestige or status" are not enough. *Id.* In *Nye v. Roberts*, for example, the United States Court of Appeals for the Fourth Circuit held that a performance evaluation

---

[4] These letters include (1) a "Letter of Counseling" issued on October 16, 2019 (Compl. at ¶ 26); (2) a "coaching/training" reprimand issued on November 7, 2019 for hitting another bus's mirror (*Id.* at ¶ 28); (3) a "Letter of Reprimand" issued on January 22, 2020 for talking negatively about Nase (*Id.* at ¶ 37); and (4) a "Coaching Form" issued on February 24, 2020 (*Id.* at ¶ 43).

7

that moved the plaintiff "further along the discipline track and closer to termination" qualified as an adverse employment action. 145 F. App'x 1, 6 (4th Cir. 2005) (summary judgment). Additionally, in *Spriggs v. Sr. Servs. of Se. Va.*, the plaintiff received a poor performance evaluation which his employer stated may lead to termination if he did not improve. 2012 WL 1940761, at *7 (E.D. Va. May 29, 2012) (granting summary judgment on other grounds). There, the Court determined that the performance evaluation was an adverse action because it led to Spriggs' probation. *Id.*

Thweatt's poor performance evaluation affected the terms and conditions of her employment and, thus, constituted an adverse employment action. The performance evaluation transformed Thweatt from a decades-long veteran employee to an employee on the verge of termination. Multiple PGCPS staff members, including Nase, Pennycuff, and a human resources employee, told Thweatt that her contract would not be renewed because of the negative performance evaluation. (*Id.* at ¶¶ 46–48.) Most importantly, shortly after the performance evaluation, Thweatt's name was not included in the employee roster for the next school year. (*Id.* at ¶ 48.) According to the Complaint, the poor performance evaluation at least placed Thweatt "further along the discipline track and closer to termination." *Nye*, 145 Fed. App'x at 6. Furthermore, in contrast to the plaintiff in *Spriggs*, Plaintiff was not merely placed on probation but told she would be terminated as a result of the performance evaluation. *See* 2012 WL 1940761, at *7.

Defendant relies on *Wooten v. Gruenberg* to argue that the performance evaluation, coupled with the subsequent recommendations to terminate Thweatt, was not an adverse action. No. 1:15cv724, 2016 WL 1364043 at *5 (E.D. Va. Apr. 4, 2016).

8

*Wooten*, however, was decided at the summary judgment stage where the plaintiff must meet the higher bar of establishing a prima facie case. *Id.* In fact, the Court in *Wooten* denied a motion to dismiss earlier. *Id.* (ECF No. 14.)

Defendant relatedly argues that, because Thweatt resigned and was not terminated, she cannot allege any adverse employment action. However, this argument misses the mark. "[C]onduct short of ultimate employment decisions can constitute adverse employment action." *Swaso*, 698 F. App'x at 748 (quoting *James* 368 F.3d at 375–76). Plaintiff's poor performance evaluation qualifies as an adverse employment action.[5] Thus, Plaintiff sufficiently alleges the second element of a racial discrimination claim.

Next, the Court considers the fourth element of a racial discrimination claim. Unlike above, Thweatt has not sufficiently alleged the fourth element. A plaintiff must allege that the circumstances surrounding the adverse employment action create an inference of unlawful discrimination. *Swaso*, 698 F. App'x at 747; *Woods v. City of Greensboro*, 855 F.3d 639, 649 (4th Cir. 2019). Plaintiffs commonly establish this element with evidence that "similarly-situated employees outside the protected class received more favorable treatment." *White v. BFI Waste Servs., LLC*, 375 F.3d 288, 295 (4th Cir. 2004). The plaintiff, however, "is not required as a matter of law to point to a similarly situated white comparator in order to succeed on a race discrimination claim." *Bryant v. Aiken Reg'l Med. Ctrs. Inc.*, 333 F.3d 536, 545 (4th Cir. 2003). If the plaintiff

---

[5] Defendant also argues that Plaintiff's resignation does not separately qualify as an adverse employment action because Plaintiff has not satisfied the elements of constructive discharge. (Def.'s Rep. at 4, ECF No. 9.) Because Plaintiff's poor performance evaluation is an adverse employment action, the Court need not address the constructive discharge argument at this time.

9

does rely upon comparators, the similarity "must be clearly established in order to be meaningful." *Swaso*, 698 F. App'x at 748 (quoting *Lightner v. City of Wilmington, N.C.*, 545 F.3d 260, 265 (4th Cir. 2008) (summary judgment)). This includes allegations that the comparators are "similar in all relevant respects" including that they worked under the same supervisor, regulations, and circumstances as the plaintiff. *Haywood v. Locke*, 387 F. App'x 355, 359 (4th Cir. 2010). Additionally, the comparators "must have been treated more favorably than the [p]laintiff *with respect to the adverse action complained of.*" *Wilson v. City of Chesapeake*, 290 F. Supp. 3d 444, 458 (E.D. Va. 2017), *aff'd*, 738 F. App'x 169 (4th Cir. 2018) (citing *Haywood*, 387 F. App'x. at 359) (emphasis added).

In this case, Plaintiff relies on similarly situated comparators to establish an inference of unlawful discrimination. She has not, however, sufficiently pled that they were "similar in all relevant respects." *Haywood*, 387 F. App'x at 359.

Thweatt first offers three bus drivers, Rhodes, Grubbs, and Matterson, as comparators who struck other objects with their buses but did not receive any disciplinary letters. (Compl. at ¶ 29). The fact that the comparators did not receive letters is irrelevant because, as detailed above, those letters do not constitute adverse employment actions. And the Complaint provides no details as to how these comparators were treated more favorably than Plaintiff in relation to the only adverse action alleged in this case, Thweatt's performance evaluation. *See Wilson*, 290 F. Supp. 3d at 458. Thus, these bus drivers are not proper comparators.

Next, Thweatt offers three white drivers, White, Butler, and Matterson, as comparators regarding Nase's disparate denial of roadside assistance. (Compl. at ¶¶ 19,

44.) Plaintiff sufficiently alleges that these comparators are similar in most respects. They were all bus drivers for PGCPS; Nase supervised all three; and it is reasonable to infer that all PGCPS bus drivers work under similar regulations and instructions. *See Tobey*, 706 F.3d at 383. White even drove the same bus route as Thweatt. (Compl. at ¶ 45). But again, Plaintiff does not connect her comparators to the adverse employment action complained of. White, Butler, and Matterson received roadside assistance when Thweatt did not (*id.* at ¶¶ 19, 44), and Thweatt received a poor performance evaluation because of her requests for assistance (*id.* at ¶ 46). Yet the Complaint never states that the comparators, in turn, *did not* receive a poor performance evaluation that recommended their termination. Thus, Plaintiff fails to allege that the comparators were "treated more favorably . . . with respect to the adverse action complained of." *Wilson*, 290 F. Supp. 3d at 458. For this reason, the Complaint will be dismissed for failure to state a claim.

Nonetheless, Rule 15 provides that the Court should "freely" give parties leave to amend their pleadings "when justice so requires." Fed. R. Civ. P. 15(a)(2). Whether justice requires amendment is within the discretion of the trial court. *GE Inv. Priv. Placement Partners II v. Parker*, 247 F.3d 543, 548 (4th Cir. 2001). A court may grant leave to amend *sua sponte*. *See Edwards v. Murphy-Brown, L.L.C.*, 760 F. Supp. 2d 607, 633 (E.D. Va. 2011). "A motion to amend should be denied only where it would be prejudicial, there has been bad faith, or the amendment would be futile." *Nourison Rug Corp. v. Parvizian*, 535 F.3d 295, 298 (4th Cir. 2008). Allowing Plaintiff to amend her Complaint would not cause any prejudice to Defendant because litigation on Count II of

the original Complaint would continue regardless. There is no evidence of bad faith or that any amendment by Plaintiff would be futile. Thus, the Court will grant the Plaintiff leave to amend her Complaint.

## IV. CONCLUSION

In sum, the Court finds that Plaintiff's Complaint fails to state a claim for relief on Count I because the Complaint does not sufficiently relate similarly situated comparators to any adverse employment action. Accordingly, the Partial Motion to Dismiss (ECF No. 4) will be granted. Furthermore, the Court will grant Plaintiff leave to file an amended complaint.

An appropriate Order will accompany this Memorandum Opinion.

/s/
Henry E. Hudson
Senior United States District Judge

Date: Sept. 3, 2021
Richmond, Virginia