## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

ADDIE E. THWEATT,           )
                                )
         Plaintiff,        )
                                )
v.                             )     Civil Action No. 3:21cv258–HEH
                                )
PRINCE GEORGE COUNTY      )
SCHOOL BOARD,           )
                                )
         Defendant.     )

### MEMORANDUM OPINION
**(Granting Defendant's Motion for Summary Judgment)**

Plaintiff Addie E. Thweatt ("Thweatt") drove a school bus for Defendant Prince George County School Board (the "School Board"), until the School Board decided not to renew her contract towards the end of the 2019/2020 school year. Thweatt, an African-American, now alleges that the School Board terminated her because of her race or because she filed a report accusing the School Board of discrimination and harassment. The School Board disagrees and claims that it terminated Thweatt because she could not manage her school bus and could not treat others professionally or respectfully.

Currently before the Court is the School Board's Motion for Summary Judgment (the "Motion") filed on February 11, 2022. (Mot., ECF No. 24.) The parties have submitted memoranda supporting their respective positions. The Court heard oral argument on May 3, 2022, and the Motion is now ripe for review. For the reasons stated below, the Court will grant the Motion and dismiss the case with prejudice.

## I.  STANDARD OF REVIEW

Pursuant to Rule 56, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  The relevant inquiry is "whether the evidence presents a sufficient disagreement to require submission to a [trier of fact] or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986).  Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine factual dispute exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86 (1986).

"[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247–48.  A material fact is one that might affect the outcome of a party's case. *Id.* at 248; *Hogan v. Beaumont*, 779 F. App'x 164, 166 (4th Cir. 2019).  A genuine issue concerning a material fact only arises when the evidence, viewed in the light most favorable to the nonmoving party, is sufficient to allow a reasonable trier of fact to return a verdict in the party's favor. *Anderson*, 477 U.S. at 248.

The existence of a mere scintilla of evidence in support of the nonmoving party as well as conclusory allegations or denials, without more, are insufficient to withstand a summary judgment motion. *Tom v. Hosp. Ventures LLC*, 980 F.3d 1027, 1037 (4th Cir. 2020).  Accordingly, to deny a motion for summary judgment, "[t]he disputed facts must

be material to an issue necessary for the proper resolution of the case, and the quality and

quantity of the evidence offered to create a question of fact must be adequate."

*Thompson Everett, Inc. v. Nat'l Cable Advert.*, 57 F.3d 1317, 1323 (4th Cir. 1995) (citing

*Anderson*, 477 U.S. at 252). "[T]here must be 'sufficient evidence favoring the

nonmoving party for a jury to return a verdict for that party. If the evidence is merely

colorable, or is not significantly probative, summary judgment may be granted.'"

*Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 213 (4th Cir. 2007) (citing *Anderson*, 477

U.S. at 249–50). When applying the summary judgment standard, courts must construe

the facts in the light most favorable to the nonmoving party and may not make credibility

determinations or weigh the evidence. *Holland*, 487 F.3d at 213.

## II.    BACKGROUND

As required, the Court resolves all genuine disputes of material fact in favor of the

nonmoving party and disregards immaterial factual assertions. *Anderson*, 477 U.S. at

248, 255. Applying this standard, the Court concludes that the following narrative

represents the facts.[1]

Thweatt began working as a school bus driver for the School Board in 1980.

(SUMF ¶ 1.) As part of their job, school bus drivers must manage student behavior on

their bus and discipline them every so often. (*Id.* ¶¶ 8, 9.) At the same time, a school bus

---

[1] The Court cites to the statement of undisputed material facts ("SUMF") contained in the School
Board's briefing wherever appropriate. (Def.'s Mem. Supp. at 2–11, ECF No. 25.) Otherwise,
the Court cites directly to the exhibits submitted by the parties. In some instances, Thweatt
argues that a fact contained in the School Board's SUMF is disputed but does not point to
evidence in the record actually disputing the point. In those circumstances, the Court cites to the
SUMF and the parties' exhibits to add more context.

driver must show respect to students, parents, and staff members. (*Id.* ¶ 8.) Bus drivers should not be confrontational or sarcastic with students, nor should they argue with, yell at, or use the bus brakes to "manage" students. (*Id.* ¶ 10.)[2]

According to the School Board, Thweatt did not adequately manage student behavior on her bus and was not respectful to students and staff members. (Def.'s Mem. Supp. at 23–24.) Based on this, the School Board did not renew Thweatt's contract on May 21, 2020 and Thweatt finished working for the School Board on June 12, 2020. (SUMF ¶¶ 1, 48.) The School Board cites a number of incidents to support its decision.

First, on May 8, 2018, Thweatt and a student, K.R., engaged in a verbal altercation on the school bus (the "verbal altercation"). (SUMF ¶ 11.) K.R. entered the bus and said aloud, "I'm going to hit you in the face." (Bus Video, ECF No. 25-13.) From the bus surveillance video that recorded the altercation, it is unclear if K.R. addressed that comment to Thweatt or to another student. (*Id.*) Thweatt asked K.R. who she was talking to and K.R., possibly sarcastically, responded "Who do you think?" and "Yes, I want to hit you." (*Id.*) In reply, Thweatt rose from her driver's seat, continued to confront K.R. about "running her mouth," and demanded to know who K.R. was talking to. (*Id.*) K.R. refused to answer and angrily walked off the bus. (*Id.*) After the incident, the School Board recorded Thweatt's behavior in her employee file and placed Thweatt

---

[2] School bus driver responsibilities are listed in the 2013/2014 Driver Handbook. (Handbook, ECF No. 25-10.) While Thweatt is not sure if she was ever given a Driver Handbook and disputes that it applies, she agrees that school bus drivers are responsible for the behaviors listed here regardless of whether the Handbook applied or not. (Pl.'s Dep. 37:25–38:15, 40:2–42:13, ECF Nos. 25-1, 38-1, 50-1.)

on administrative leave while criminal charges were pending. (SUMF ¶ 14.) After a state court found her not guilty of disorderly conduct on July 17, 2018, the School Board reinstated Thweatt and returned her withheld salary. (*Id.* ¶ 15.) While Thweatt was acquitted of all criminal charges, she agrees she could have handled the verbal altercation better. (Pl.'s Dep. 53:10–13.)

Thweatt returned to work in the fall of the 2018/2019 school year. (*Id.* ¶ 16.) The School Board assigned Thweatt to a new route, Route 23, so that she no longer drove K.R.[3] (*Id.*) Thweatt, as well as a bus aide that used to work on Route 23, experienced students on that route that were especially troublesome and hard to manage. (Pl.'s Dep. 76:3–21; Williams Decl. ¶ 4, ECF No. 38-5.)[4] Thweatt requested a bus aide and received one for a single day during the 2018/2019 school year. (Pl.'s Dep. 90:23–91:12.)

Moving next to the 2019/2020 school year, Thweatt continued to drive Route 23 and did not request a different route assignment. (SUMF ¶ 19.) On October 15, 2019 the School Board hired a new Coordinator of Transportation, Dustin Nase. (*Id.* ¶ 6, 20.) Nase was Thweatt's direct supervisor. (*Id.* ¶ 6.) After Nase started, he received a complaint about Thweatt from the parent of T.T., a student on Thweatt's school bus.

---

[3] The evidentiary record contains some confusion as to whether Route 23's route number changed at some point. For simplicity's sake, the Court will continue to refer to it as Route 23.

[4] The School Board objects to certain declarations made by bus drivers and aides about the troubled nature of Route 23 because those declarations are made without personal knowledge and contain hearsay. (Def.'s Reply at 5 n.4, ECF No. 50; Decl. Objections, ECF No. 50-7.) The Court agrees that much of the declarations are inadmissible, but Thweatt and Cheryl Williams, a bus aide that worked on Route 23 before Thweatt, both have personal experience with the nature of Route 23. Thus, their statements do not rely on hearsay, are admissible, and the Court may consider them.

(SUMF ¶ 21.)  Nase reviewed the school bus footage related to the complaint and observed that Thweatt had punished T.T. for wearing two earbuds, a violation of school policy, while not punishing two other students on the bus for doing the same thing (the "earbud incident").  (SUMF ¶ 22.)  Thweatt does not recall noticing other students wearing two earbuds.  (Pl.'s Dep. 119:1–15.)  On October 16, 2019, Nase issued a Letter of Counseling to Thweatt which instructed her to act with more professionalism and not target individual students.  (Letter of Counseling, ECF No. 25-43.)

On January 10, 2020, Thweatt and three other bus drivers spoke negatively about Nase while standing around their school buses.  (SUMF ¶ 25.)  Another bus driver alerted Nase to the negative talk, and he, Dr. Lisa Pennycuff, the School Board's Superintendent, and Dr. Laura Estes, the School Board's Chief Human Resources Officer, reviewed footage of the conversation.  (*Id.* ¶¶ 2–3, 26–27.)  Thweatt admits that she talked negatively about Nase with the other bus drivers (the "negative talk incident").  (Pl.'s Resp. Perform. Eval. at 2, ECF No. 25-33.)  Each driver, including Thweatt, received a letter of reprimand for talking negatively about Nase.  (SUMF ¶ 27.)  Thweatt's Letter of Reprimand referenced other previous disciplinary actions including the May 10, 2018 verbal altercation and the October 16, 2019 earbud incident, which, according to the Letter, "indicate a cumulative, pervasive, and chronic pattern of unacceptable work performance."  (Letter of Reprimand, ECF No. 25-21.)

Thweatt filed a "Report of Discrimination and Harassment" with the School Board on February 3, 2020.  (SUMF ¶ 28.)  In the Report, Thweatt alleges that the Letter of Reprimand, along with the way that Nase had treated her generally, constituted

discrimination and created a hostile work environment. (Pl.'s Report, ECF No. 25-25.)
After an investigation, School Board compliance officers determined that Nase, Dr.
Pennycuff, and Dr. Estes had not discriminated against Thweatt and that their actions did
not create a hostile work environment. (SUMF ¶ 32.)

The next incident occurred on February 13, 2020. Thweatt issued a bus referral to
A.H., a male student, after he kissed a female student, but did not issue a bus referral to
the female student involved (the "kissing incident").[5] (SUMF ¶ 33.) Afterwards, School
Board transportation staff reminded Thweatt to issue bus referrals to *all* students involved
in an incident. (*Id.* ¶ 35.)

More generally, during the 2019/2020 school year, Thweatt requested assistance
with managing the students on her school bus at least eight times and received help from
school transportation staff at least five times. (SUMF ¶¶ 36–37.) No other school bus
driver requested assistance that many times. (SUMF ¶ 38; First Nase Email, ECF No.
25-30.) While Thweatt maintains that Route 23 was always hard to manage, during the
2019/2020 school year, the students were even more troublesome and unruly. (Thweatt
Dep. 92:2–92:17.) Because of the troublesome students, on January 30, 2020, Thweatt
asked Nase for a bus aide to ride along with her for assistance, but Nase denied that
request. (SUMF ¶ 39; Nase Dep. 72:19–73:4, ECF Nos. 25-11, 38-10, 50-9; First Nase
Email.) While the School Board has many bus aides, almost all are assigned to buses that
transport children with special needs. (Nase Dep. 72:19–73:25, 139:6–13; Rhodes Dep.

---

[5] A bus referral is akin to a citation or a write-up for a student. After a student receives a bus
referral, school administrators review the referral and decide what punishment is appropriate.

37:12–38:6, ECF Nos. 25-7, 38-2, 50-8.)  Besides buses that transport students with special needs, only the Puddledock route had a bus aide.[6]  (*Id.*)  That said, Route 23 had a bus aide previously, before Thweatt started driving the route.  (Williams Decl. ¶ 4.)

Also during the 2019/2020 school year, Jennifer Rollings, Assistant Principal at Walton Elementary School, received frequent complaints from parents about Thweatt's treatment of their children.  (SUMF ¶ 40.)  Rollings shared these complaints with Nase. (Rollings Decl. ¶ 15, ECF No. 25-31.)  In an effort to help Thweatt and other bus drivers, Rollings provided tips on how to appropriately manage students on the school bus. (SUMF ¶ 41.)

Towards the end of the 2019/2020 school year, on April 2, 2020, Nase conducted Thweatt's performance evaluation.  (SUMF ¶ 44.)  Overall, Nase ranked Thweatt's performance "unsatisfactory" and recommended that the School Board not renew her contract for the next school year.  (*Id.*)  Nase's feedback in the performance evaluation focused on Thweatt's difficulties in managing her bus, repeated requests for assistance in controlling the students on her bus, and her lack of professionalism in interacting with students and staff members.  (SUMF ¶ 45; Perform. Eval., ECF No. 25-32.)  On April 6, 2020, Thweatt submitted a letter contesting Nase's conclusions about her performance and argued that any problems on her bus were unfounded or caused by a lack of support. (Pl.'s Resp. Perform. Eval. at 1–2.)  On May 21, 2020, Dr. Estes informed Thweatt that she would not be renewed for the next school year and was free to pursue other

---

[6] The Puddledock route had a bus aide due to extenuating circumstances that the Court need not detail here.

opportunities.  (SUMF ¶ 48.)  Thweatt's last day of employment with the School Board

was June 12, 2020.  (SUMF ¶ 49.)

## III.   DISCUSSION

In her Second Amended Complaint, Thweatt alleges that the School Board

discriminated against her based on her race (Count I) and retaliated against her after she

engaged in a protected activity (Count II).  (Second Am. Compl., ECF No. 8.)  The

School Board moves for summary judgment on both Counts.  (Mot. at 1.)  The Court will

consider each in turn.

### A.   Count I – Racial Discrimination

Relevant to Count I, Title VII prohibits employers from discriminating against an

employee because of their race.  42 U.S.C. § 2000e-2(a)(1).  A plaintiff may present

direct evidence that the defendant intentionally discriminated against her or she may rely

on circumstantial evidence of that intent.  *Holland*, 487 F.3d at 213–14.  In this case,

Thweatt does not offer any direct evidence of discrimination.  (Pl.'s Mem. Opp'n at 19,

ECF No. 38.)  When the plaintiff relies on circumstantial evidence, the Court analyzes

the evidence using the familiar *McDonnell Douglas* framework.  *Holland*, 487 F.3d at

214; *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

Under that framework, a plaintiff must first establish her prima facie case by

proving that she (1) is a member of a protected class; (2) that she suffered an adverse

employment action; (3) that she was meeting the defendant's legitimate expectations; and

(4) that the circumstances surrounding the adverse employment action give rise to an

inference of discrimination.  *Swaso v. Onslow Cty. Bd. of Educ.*, 698 F. App'x 745, 747

(4th Cir. 2017); *Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 219 (4th Cir. 2016). The parties agree that Thweatt is a member of a protected class; she is African-American. (Def.'s Mem. Supp. at 14; Pl.'s Mem. Opp'n at 21.) They further agree that Thweatt suffered an adverse employment action when the School Board ultimately did not renew her contract in May 2020. (SUMF ¶¶ 47–50.) The School Board argues that Thweatt offers no evidence on the other two elements. (Def.'s Mem. Supp. at 14.)

First, The School Board contends that Thweatt was not meeting its legitimate expectations. *(Id.* at 14.) The Court looks to the perception of the decision maker in considering whether the employee was meeting job expectations at the time of dismissal. *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 960–61 (4th Cir. 1996); *Smith v. Flax*, 618 F.2d 1062, 1067 (4th Cir. 1980).

Here, the School Board offers uncontradicted evidence that Nase, Thweatt's direct supervisor, and Dr. Pennycuff, Superintendent of the School Board, thought Thweatt was not meeting expectations. Thweatt's Performance Evaluation, the Letter of Counseling, and the Letter of Reprimand all reference multiple issues with Thweatt's performance. (Perform. Eval.; Letter of Counseling; Letter of Reprimand.) Thweatt's Performance Evaluation concludes that Thweatt "has a pattern of unsuccessfully managing her bus," has consistently needed others "to get discipline under control" on her bus, and has "not show[n] professionalism in her interactions with students, co-workers, and leadership." (Perform. Eval. at 1–2.)

In response, Thweatt argues that she was meeting expectations because of her positive performance evaluations from 2017 and earlier. (Pl.'s Mem. Opp'n at 22.)

These prior performance evaluations, however, are immaterial because the question is whether Thweatt was meeting the School Board's expectations close in time to her termination, not in the past. *Warch v. Ohio Cas. Ins. Co.*, 435 F.3d 510, 516–17 (4th Cir. 2006); *Diamond v. Bea Maurer, Inc.*, 128 F. App'x 968, 973 (4th Cir. 2005).

Next, Thweatt contends that *she thought* she was meeting expectations, and thus, there is evidence in the record that she met expectations. (Pl.'s Mem. Opp'n at 22–25 (citing to Thweatt's opinion of her own performance throughout).) Thweatt's opinion of her own performance, however, is irrelevant to the inquiry. *Jones v. Constellation Energy Projects & Servs. Grp., Inc.*, 629 F. App'x 466, 469 (4th Cir. 2015); *Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 279–280 (4th Cir. 2000).[7] The true issue is whether Thweatt's *supervisors*, Nase and Dr. Pennycuff, legitimately believed that she was not meeting expectations. *See Hawkins*, 203 F.3d at 279–280.

Alternatively, Thweatt maintains that Nase and Dr. Pennycuff's expectations were illegitimate and, therefore, should be ignored. (Pl.'s Mem. Opp'n at 22–25.) However, expectations are "legitimate" unless the plaintiff can muster evidence that they are a "sham designed to hide the employer's discriminatory purpose." *Warch*, 435 F.3d at 518 (citing *Brummett v. Lee Enters., Inc.*, 284 F.3d 742, 745 (7th Cir. 2002)). Put another way, legitimate expectations must be bona fide. *Smith v. Premier Prop. Mgmt.*, 793 F. App'x 176, 179 (4th Cir. 2019).

---

[7] The opinions of Thweatt's co-workers are similarly irrelevant and insufficient to prove that Thweatt was meeting the School Board's legitimate expectations. *See King v. Rumsfeld*, 328 F.3d 145, 149 (4th Cir. 2003); *Tinsley v. First Union Nat'l Bank*, 155 F.3d 435, 444 (4th Cir. 1998).

There is no evidence in the record that the School Board's expectations were a sham or not bona fide.  Thweatt argues that Nase "placed [her] in a position to fail" by never giving her a bus aide on Route 23.  (Pl.'s Mem. Opp'n at 23.)  Nase, however, was under no obligation to give a bus aide to Thweatt.  While Route 23 may have had a bus aide at some point before Thweatt took over the route (Williams Decl. ¶ 4), it had no aide in the 2018/2019 and 2019/2020 school years (Nase Dep. 72:19–73:25).  Only one bus route, aside from those transporting students with special needs, had a bus aide and that was the Puddledock route.  (*Id.* at 139:6–13.)  That fact shows that Nase had *similar* expectations for Thweatt as he had for all the other bus drivers not driving students with special needs.

Thweatt also points to Nase's statement made on March 5, 2020, that he would not switch Thweatt's route and that he wanted her gone.  (Watko Decl. ¶ 4, ECF No. 28-12.)[8] Thweatt, however, never asked to switch routes.  Moreover, given its timing, Nase's statement that he wanted Thweatt gone is no evidence of sham expectations.  By March 5, 2020, many of the incidents that led to Nase recommending Thweatt's termination had already occurred.  (*See* Perform. Eval. at 1–2.)  A statement by Nase at this late stage in the events, without more, merely shows that Thweatt's performance up to that point really did concern him.  It does not show that Nase's expectations were a sham.

---

[8] The School Board argues that this portion of Jeanett Watko's Declaration is hearsay.  (Decl. Objections at 1.)  Surely though, Nase's statement to Watko would likely be admissible as an opposing party's statement.  *See* FED. R. EVID. 801(d)(2).

Thweatt also argues that the School Board's expectations were illegitimate because she received conflicting instructions from different supervisors. (Pl.'s Mem. Opp'n at 24.) A close look at the undisputed evidence, however, shows that no conflicting instructions were given.[9] After the May 8, 2018 verbal altercation, a supervisor told Thweatt she should not have stood up and yelled at the student. (Rhodes Dep. 52:19–53:2.) Later, in managing Route 23, Nase wrote that Thweatt should have stood up to address students and respectfully ordered them to behave. (First Nase Email.) Nothing in these two instructions is contradictory. In some scenarios, bus drivers should stand up to address students. In other scenarios, it is not warranted. This fits with the expectation, which Thweatt agrees with, that school bus drivers must manage student behavior on their bus but maintain a respectful and nonconfrontational attitude. (SUMF ¶¶ 8–10.)

Similarly, Thweatt's argument that Rollings and Nase gave her conflicting instructions on when to issue referrals to students does not hold water. (Pl.'s Mem. Supp. at 24.) Rollings received complaints that Thweatt was issuing unjustified bus referrals to students. (SUMF ¶ 40; First Rollings Email, ECF No. 50-3.) Rollings suggested that Thweatt issue fewer bus referrals and use more positive reinforcement. (SUMF ¶ 41.) On one occasion related to the earbud incident, Nase suggested that Thweatt should issue referrals with *more consistency*. (Nase Dep. 34:2–18; Letter of Counseling.) Taken in

---

[9] In considering Thweatt's argument, the Court does not decide whether different supervisors' contradictory instructions, without more, would create a genuine dispute as to whether their expectations were illegitimate.

context, Nase instructed Thweatt not to target certain students with bus referrals. (Letter of Counseling.)  Rollings' suggestions never contradicted that.

In summary, Thweatt points to no evidence that she was meeting the School Board's expectations in managing her school bus around the time she was terminated. Instead, she advances multiple reasons why the School Board's expectations were *illegitimate*.  (Pl.'s Mem. Opp'n at 22–25.)  Nevertheless, these arguments fail because they do not point to any evidence that the School Board's expectations were a sham or less than bona fide.  *Warch*, 435 F.3d at 518 (4th Cir. 2006); *Smith*, 793 F. App'x at 179. Thus, Thweatt fails to prove the element of her prima facie case that she was meeting the School Board's legitimate expectations.  *See Guessous*, 828 F.3d at 219.

Second, the School Board argues that there were no circumstances surrounding Thweatt's termination that give rise to an inference of discrimination.  *Swaso*, 698 F. App'x at 747.  Plaintiffs typically establish this element with evidence that "similarly-situated employees outside the protected class received more favorable treatment."  *White v. BFI Waste Servs., LLC*, 375 F.3d 288, 295 (4th Cir. 2004).  If the plaintiff does rely upon comparators, the similarity "must be clearly established in order to be meaningful." *Swaso*, 698 F. App'x at 748 (quoting *Lightner v. City of Wilmington, N.C.*, 545 F.3d 260, 265 (4th Cir. 2008)).  The comparators must be "similar in all relevant respects" including that they worked under the same supervisor, regulations, and circumstances as the plaintiff.  *Haywood v. Locke*, 387 F. App'x 355, 359 (4th Cir. 2010).  Additionally, the comparators "must have been treated more favorably than the [p]laintiff *with respect to the adverse action complained of.*"  *Wilson v. City of Chesapeake*, 290 F. Supp. 3d

14

444, 458 (E.D. Va. 2017), *aff'd*, 738 F. App'x 169 (4th Cir. 2018) (citing *Haywood*, 387 F. App'x. at 359) (emphasis added).

In her Second Amended Complaint, Thweatt alleged that the School Board treated her differently than five other white bus drivers. (Second Am. Compl. ¶¶ 68–69, 71–72.) Thweatt, however, does not rely on these comparators in her briefs and did not mention them at the hearing. Instead, Thweatt relies on *different* white bus drivers never mentioned in her Second Amended Complaint. (Pl.'s Mem. Opp'n at 25.) First, Thweatt argues that a collection of bus drivers, all of whom received bus aides while Thweatt did not, are suitable comparators. (*Id.*) This contention, however, misses the mark because not giving Thweatt a bus aide is *not* the adverse employment action at issue in this case. *See Wilson*, 290 F. Supp. 3d at 458. Hence, none of the white bus drivers that received bus aides are proper comparators because Thweatt never ties them to the relevant adverse employment action.

Thweatt also contends that a white bus driver, Elizabeth Dunlow, is a proper comparator because she once drove away from school leaving two students behind, and she participated in the January 2020 negative talk incident. (Pl.'s Mem. Opp'n at 25; Dunlow Perform. Eval., ECF No. 38-19; Dunlow Coaching Form, ECF No. 38-20.) Nevertheless, Dunlow is not a proper comparator because she is not similarly situated to Thweatt. While Dunlow had these two blemishes on her record, the evidence shows that Thweatt had even more issues that deeply concerned Nase and Dr. Pennycuff beyond comparison with Dunlow's record. *See Wilson*, 290 F. Supp. 3d at 457–58 (stressing that a proper comparator must have engaged in similar conduct as the plaintiff).

15

Beyond alleging that similarly situated comparators were treated better than herself, Thweatt may present evidence of other circumstances that give rise to an inference of discrimination. *Swaso*, 698 F. App'x at 747. To prove this inference, Thweatt refers the Court to her earlier arguments as to why the School Board's expectations were illegitimate. (Pl.'s Mem. Opp'n at 25.) As explained at length above, the Court does not see any evidence that the School Board's expectations were illegitimate, and therefore, the Court similarly finds that there is no evidence giving rise to an inference of discrimination.

Thweatt has failed to prove her prima facie case of race discrimination because she has not identified any evidence that she was meeting the School Board's legitimate expectations or that would give rise to an inference of discrimination. *See Swaso*, 698 F. App'x at 747. For good measure, however, the Court will assume for a moment that Thweatt can prove her prima facie case. Once a plaintiff proves her prima facie case, under the *McDonnell Douglas* framework, the defendant must next produce "a legitimate, nondiscriminatory reason for the adverse employment action." *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 285 (4th Cir. 2004); *Warch*, 435 F.3d at 514 (noting that this is a burden of production, not persuasion).

Here, the parties agree that the School Board articulates two reasons for the adverse employment action: (1) Thweatt was "unable to manage student behavior on the bus and was frequently relying on management and other drivers to come to her aid;" and (2) "Thweatt was displaying a negative and insubordinate attitude toward [Nase] and was unable to form positive relationships with students." (Def.'s Mem. Supp. at 23.) Courts

16

have consistently found that similarly articulated reasons meet the employer's production burden. *See, e.g., Sadeghi v. Inova Health Sys.*, 251 F. Supp. 3d 978, 994 (E.D. Va. 2017), *aff'd*, 711 F. App'x 174 (4th Cir. 2018); *Pearlman v. Pritzker*, 564 F. App'x 716, 719 (4th Cir. 2014).

The last step of the *McDonnell Douglas* framework requires a plaintiff to show evidence "that the employer's stated reasons 'were not its true reasons but were a pretext for discrimination.'" *Hill*, 254 F.3d at 285 (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000)). Even assuming that Thweatt can prove her prima facie case, she does not point to *any* evidence in the record to prove pretext.

As to Thweatt's ability to manage the students on her bus, Thweatt largely relies on the same arguments mentioned above. She contends that Nase did not provide her with a bus aide, respond to all of her requests for assistance, or advise her on how to otherwise manage Route 23. (Pl.'s Mem. Opp'n at 27.) These arguments, however, are just repackaged disagreements with the perceived *fairness* of the School Board's reasons for terminating Thweatt. The Court's task is not to determine whether the School Board's "reason was wise, fair, or even correct . . . so long as it truly was the reason for [Thweatt's] termination." *Hawkins*, 203 F.3d at 279. Thweatt's arguments do not create any reasonable inference that Nase and Dr. Pennycuff actually believed that Thweatt could control her bus and this was, therefore, not a genuine reason for terminating her. *See Hux v. City of Newport News*, 451 F.3d 311, 315 (4th Cir. 2006) (indicating that proving pretext requires putting the validity of reasons into doubt).

Thweatt's assertions relating to the School Board's second nondiscriminatory reason, that she had a negative attitude toward Nase and students, falter too. Thweatt maintains that her negative talk about Nase is not sufficient cause to fire her. (Pl.'s Mem. Opp'n at 27.) Yet, the Court does not function as a "super-personnel department." *DeJarnette v. Corning Inc.*, 133 F.3d 293, 299 (4th Cir. 1998). Absent evidence that the employer's reasons are "so flimsy as to be untrue or implausible" that a person might reasonably infer discrimination was the true motive, the plaintiff cannot prove pretext merely by calling the prudence of the employer's reasons into question. *Westmoreland v. TWC Admin. LLC*, 924 F.3d 718, 725 (4th Cir. 2019); *See Reeves*, 530 U.S. at 148. There is no evidence that the School Board's conclusion that Thweatt had a negative attitude towards Nase is so flimsy as to be implausible.[10]

Thweatt also contends that the School Board's reasons are pretextual because, within Nase's first week as Thweatt's supervisor, Nase identified her among a group of about eight bus drivers that often spoke negatively about the School Board's transportation department. (Pl.'s Mem. Opp'n at 28; Second Nase Email, ECF No. 25-20.) Yet, this is just more evidence that Nase thought Thweatt was disrespectful and unprofessional from early on. The evidence that Thweatt points to does not establish that Nase unjustly had it out for Thweatt. No trier of fact could reasonably infer from this one

---

[10] Relatedly, Thweatt quibbles with the audio quality of the video that purportedly shows her talking about Nase. (Pl.'s Mem. Opp'n at 27; Second Bus Video, ECF No. 25-19.) The quality of the video is of no consequence because Thweatt admits to talking negatively about Nase. (Pl.'s Resp. Perform. Eval. at 2.)

statement that Nase's reasons for terminating Thweatt were pretextual. *See Anderson*, 477 U.S. at 248.

Lastly, Thweatt maintains that since the School Board terminated only two bus drivers in 2020 and both were African-American, the School Board's reasons must be pretextual and it really did not renew her contract because of her race. During the 2019/2020 school year, the School Board employed 71 bus drivers. (Estes Decl. ¶ 19, ECF No. 50-17.) Of those, 32 were African-American, 38 were white, and 1 was Asian-American. (*Id.*) Thus, while both of the drivers that were terminated were African-American, the School Board retained another 30 African-American bus drivers. (*Id.* ¶ 20.) While statistical evidence can sometimes show pretext, in a case involving allegations about an individual employee, it rarely can rebut an employer's legitimate, nondiscriminatory reasons for terminating the plaintiff by itself. *Wright v. N.C. Dept. of Health and Human Servs.*, 405 F. Supp. 2d 631, 639 (E.D.N.C. 2005) (quoting *Bostron v. Apfel*, 104 F. Supp. 2d 548, 553 (D. Md. 2000)). "This is because a[n] [employer's] overall employment statistics will, in at least many cases, have little direct bearing on the specific intentions of the employer" when the employer terminated the individual employee. *Id.* (quoting *Bostron*, 104 F. Supp. 2d at 553). Here, the fact that the School Board terminated two African-American bus drivers, standing alone without any evidence otherwise tying that statistic to Thweatt's individual case, cannot prove pretext.

Thus, Thweatt has not offered up any material facts to show that she was meeting the School Board's legitimate expectations, that circumstances surrounding her termination could suggest discrimination, or that the School Board's reasons were

pretextual. Even taking all the facts in the light most favorable to Thweatt, no reasonable trier of fact could find in her favor. *Anderson*, 477 U.S. at 248. Thus, the Court will grant the Motion for Summary Judgment as to Count I.

## B.    Count II - Retaliation

In Count II, Thweatt alleges that the School Board retaliated against her by terminating her after she filed a "Report of Discrimination and Harassment." (Second Am. Compl. ¶¶ 74–85.) Title VII prohibits an employer from "discriminat[ing] against any of [its] employees . . . because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this title." 42 U.S.C. § 2000e-3(a). The elements of a prima facie retaliation claim under Title VII are: (1) engagement in a protected activity; (2) an adverse employment action; and (3) a causal link between the protected activity and the employment action. *Coleman v. Md. Ct. of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010); *Holland*, 487 F.3d at 218. If Thweatt can prove her prima facie case, then the School Board "must articulate a 'legitimate nonretaliatory reason for its actions,' at which point the burden shifts back to [Thweatt] to 'demonstrate that the proffered reason is a pretext for forbidden retaliation.'" *S.B. ex rel. A.L. v. Bd. of Educ. of Harford Cnty.*, 819 F.3d 69, 78 (4th Cir. 2016) (quoting *Rhoads v. F.D.I.C.*, 257 F.3d 373, 392 (4th Cir. 2001)). In the final analysis, a plaintiff's protected activity must be the but for cause of the adverse employment action. *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362–63 (2013).

Again, the School Board concedes that Thweatt suffered an adverse employment action and, for the purposes of this Motion, agrees that Thweatt filing her "Report" was a

protected activity. (Def.'s Mem. Supp. at 28.) However, the School Board contends that there is no evidence in the record of a causal link between Thweatt's protected activity and her dismissal and no evidence that its articulated reasons for terminating Thweatt were pretextual. (*Id.*)

Thweatt filed her Report on February 3, 2020. (SUMF ¶ 28.) Nase completed her performance evaluation, which recommended terminating Thweatt two months later, on April 2, 2020. (*Id.* ¶ 44.) Dr. Estes informed Thweatt that the School Board would definitely not renew her contract on May 21, 2020, and Thweatt officially ceased to work for the School Board in June 2020. (*Id.* ¶¶ 48, 49.) The temporal proximity between Thweatt's Report and Nase's recommendation that she be terminated likely satisfies Thweatt's prima facie case. *S.B. ex rel. A.L.*, 819 F.3d at 79; *Jacobs v. N.C. Admin. Off. of the Cts.*, 780 F.3d 562, 579 (4th Cir. 2015). Without more, however, temporal proximity cannot prove pretext at the summary judgment stage. *See S.B. ex rel. A.L.*, 819 F.3d at 79.

Thweatt attempts to supplement the temporal proximity between her Report and termination with two other pieces of evidence. First, she points again to Nase's statement on March 5, 2020, that he wanted Thweatt gone. (Watko Decl. ¶ 4.) This is a clear indication that Nase disliked Thweatt, "but a personal conflict alone does not constitute retaliation." *Spencer v. Va. State Univ.*, 919 F.3d 199, 208 (4th Cir. 2019) (citing *Hawkins*, 203 F.3d at 281.) Thweatt does nothing to create a reasonable inference that Nase wanted her gone *because of* her protected activity and not because of her

unsatisfactory performance. In fact, just two weeks before Nase's statement, the School Board had coached Thweatt about the kissing incident. (SUMF ¶¶ 33–35.)

Second, Thweatt argues that the School Board's termination was pretextual because the School Board also terminated another bus driver who filed a report. (Pl.'s Mem. Opp'n at 29–30; Pennycuff Dep. 64:4–65:7, ECF Nos. 25-5, 38-9, 50-10; Nase Dep. 108:9–14.) Yet, the School Board also renewed the contract of a third bus driver who filed a report. (Estes Decl. ¶¶ 16–18.) Statistical evidence alone proves little, but an employer's "proffered reasons must be looked at in the context of all these kinds of evidence" including statistics. *Warren v. Halstead Indus., Inc.*, 802 F.2d 746, 753 (4th Cir. 1986); *Teamsters v. United States*, 431 U.S. 324, 339 (1977) (noting that statistics are important but cannot prove much by themselves).

Here, looking at the evidence in the light most favorable to Thweatt, she can only show a temporal proximity between her protected activity and her termination, plus statistical evidence that two out of three bus drivers that engaged in protected activity were terminated. Based on those two facts alone, no reasonable trier of fact could conclude that the School Board retaliated against Thweatt. *See Anderson*, 477 U.S. at 251. Thus, the Court will grant the Motion for Summary Judgment as to Count II.

## IV.   CONCLUSION

Based on the foregoing, the Court will grant the School Board's Motion for Summary Judgment.

An appropriate Order will accompany this Memorandum Opinion.

_____ /s/

Henry E. Hudson
Senior United States District Judge

Date: May 26, 2022
Richmond, Virginia

23